UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**COURTNEY DUPREE,**

                Plaintiff,

      vs.

**UNITED STATES OF AMERICA, DIANE SOMMER, M.D., AND SCOTT MURRAY, M.D.,**

                Defendants.

Index No. 18-cv-7073 (AJN)

---

**MEMORANDUM OF LAW IN SUPPORT OF
COURTNEY DUPREE'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AGAINST
THE UNITED STATES OF AMERICA**


RICKNER PLLC
233 Broadway, Suite 2220
New York, NY 10016


On the Brief:

    Robert Rickner, Esq.

.

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ..................................................................................................i

**TABLE OF AUTHORITIES** ..........................................................................................ii

**PRELIMINARY STATEMENT** .....................................................................................1

**STATEMENT OF FACTS**..............................................................................................2

    a.   Mr. Dupree's Delayed Treatment at FCI Otisville ..........................................2

    b.   Mr. Dupree is Approved for a Hip Replacement, But Never Receives It, at FMC Devens. ..................................................................................................3

    c.   Mr. Dupree is Released From Custody, Gets a Hip Replacement, and is Fully Healed Within Weeks.................................................................................4

    d.   Mr. Dupree Claims..........................................................................................5

**ARGUMENT**....................................................................................................................5

  I.   THE UNDISPUTED FACTS SHOW THAT THE BOP BREACHED ITS DUTY TO PROVIDE MEDICAL CARE TO MR. DUPREE WHEN IT UNNECESSARILY DELAYED AND THEN DENIED THE HIP REPLACEMENT SURGERY. .......................6

    a.   BOP, and its Agents and Employees, had a Duty to Provide Mr. Dupree with Adequate, Timely, Medical Care. ................................................................6

    b.   The BOP Breached Its Duty of Care to Mr. Dupree........................................9

**CONCLUSION** ...............................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 6

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ............. 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 5

*Garzione v. Vassar Bros. Hosp.*, 36 A.D.2d 390 (N.Y. App. Div. 1st Dep't 1971), aff'd sub nom.,
   30 N.Y.2d 857, (N.Y. 1972) ................................................................................................... 8

*Jones v. United States*, 91 F.3d 623 (3d Cir. 1996) ....................................................................... 6

*Kagan v. State*, 221 A.D.2d 7 (N.Y. App. Div. 2nd Dep't 1996) .............................................. 7, 8

*Kless v. Paul T.S. Lee, M.D., P.C.*, 19 A.D.3d 1083 (N.Y. App. Div. 4th Dep't 2005) ................. 7

*Marchione v State of New York*, 194 AD2d 851 (N.Y. App. Div. 3rd Dep't 1993) ....................... 7

*Powlowski v. Wullich*, 102 A.D.2d 575 (N.Y. App. Div. 4th Dep't 1984) .................................... 7

*Stanback v. State*, 163 A.D.2d 298 (N.Y. App. Div. 2d Dep't. 1990) ........................................... 8

*Toth v. Cmty. Hosp. at Glen Cove*, 22 N.Y.2d 255 (N.Y. 1968) .................................................. 7

*United States v. Muniz*, 374 U.S. 150 (1963) ............................................................................... 6

*United States v. Olson*, 546 U.S. 43 (2005) ............................................................................. 6, 8

## STATUTES

18 U.S.C.A. § 4042 ....................................................................................................................... 6

28 U.S.C. § 2674 .................................................................................................................. passim

28 USC § 1346 .............................................................................................................................. 6

Fed. R. Civ. P. 56 ................................................................................................................ 1, 5, 11

Plaintiff Courtney Dupree ("Mr. Dupree" or "Plaintiff") hereby submits this Memorandum of Law in Support of his motion for partial summary judgment under Federal Rule of Civil Procedure 56 as to liability on his Federal Tort Claims Act, 28 U.S.C. § 2674 ("FTCA") claim against the United States of America.

## PRELIMINARY STATEMENT

Courtney Dupree was incarcerated and under the control of the Federal Bureau of Prisons ("BOP") from March 2011 until December 2016, and throughout that time he suffered from severe arthritic degeneration in his left hip, causing him severe pain. In fact, nearly every single medical record from the BOP refers to his condition as being severe. five separate doctors, at five separate facilities, found that Mr. Dupree needed a hip replacement to treat this severe arthritis. Mr. Dupree was so desperate to get surgery and relieve his pain, he forfeited his halfway house time, after being told that this sacrifice would ensure there was enough time left in BOP custody for him to have his hip replaced. But the BOP administrators never actually let him have the surgery, against the advice of five doctors. The BOP had a duty to provide him medical care, under federal law and under state law, both of which are incorporated into the FTCA. And by failing to give him the surgery, the BOP breached its duty to Mr. Dupree.

Every single fact supporting this claim is well documented in the BOP's own records, and the depositions of the BOP's medical staff. Consequently, this is a rare case where this Court should grant summary judgment on liability to the plaintiff. There is simply no dispute of fact as to the severity of Mr. Dupree's condition, or the findings of the BOP's own doctors, and the outside doctors the BOP hired for orthopedic and surgical consultations.

## STATEMENT OF FACTS

**a. Mr. Dupree's Delayed Treatment at FCI Otisville**

Courtney Dupree, a graduate of Wharton and former athlete at the University of North Carolina, was in his 40's when he was incarcerated in March 2011. ¶¶1-3.[1] In March 2011, he fell from his bunk, possibly exacerbating a prior basketball injury. ¶¶4-7. By 2013, he had been transferred to FCI Otisville, and medical records, including an MRI, show that he had severe arthritic degeneration in his left hip, he had trouble moving to the top bunk, his left leg had become shorter, and he was discussing hip replacement surgery with the clinical director at FCI Otisville, Dr. Diane Sommer. ¶¶5-25. The BOP's own Clinical Practice Guidelines stress the importance of physical therapy, as well as assistance devices like a cane, to manage the pain of severe arthritis, but Dr. Sommer did not prescribe either treatment because she thought they would not help his condition. ¶¶27-31. Between October 2013 and January 2015, Mr. Dupree did not receive any medical treatment, except medication, for his severe arthritis. ¶¶36-37. By January 14, 2015, the pain had become even worse, he had trouble getting out of a chair, and he was referred to an outside hospital orthopedic consultation. ¶¶38-40. At the consultation, on May 26, 2015, the doctor at CrystalRun Healthcare found that he could try an intraarticular injection, but that the only definitive treatment was a hip replacement, and Mr. Dupree chose the hip replacement. ¶¶41-51. By August 27, 2015, Mr. Dupree's left leg had gotten so much shorter he needed a lift in his shoe, and he was walking with a severe limp. ¶¶52-66.

In November 2015, Dr. Sommer put in a request that Mr. Dupree be transferred to FMC Devens where he could get a new hip. ¶¶67-72. But the request was denied because Dr. Sommer had never given Mr. Dupree a cane, despite the BOP's Clinical Guideline that stated that a cane

---

[1] All references to paragraphs herein correspond with the 56.1 Statement.

(or similar mobility device) was important to manage pain, and that he should try it for at least three months before he could be considered for surgery. ¶¶29-31, 65, 73-89. Dr. Sommer said this was "stupid." ¶88. So Mr. Dupree limped through Otisville, and was even assigned to shovel snow, while he tried the cane. ¶¶91-92. At this point, he was so eager for the surgery, and pain relief, he gave up his chance to be released from custody earlier to a halfway house, to ensure he could have the surgery while he was still in custody. ¶¶89-100.

   b. **Mr. Dupree is Approved for a Hip Replacement, But Never Receives It, at FMC Devens.**

On March 24, 2016, Dr. Sommer resubmitted the transfer request, it was approved, and Mr. Dupree was transferred to FMC Devens. ¶¶101-107. At the first intake meeting, with Dr. Scott Murray, Dr. Murray moved up the date for Mr. Dupree's orthopedic consultation for a hip replacement, from June 17, 2016 to June 7, 2016, and scheduled him for physical therapy. ¶¶108-118. At his first ever visit to a physical therapist, he described "excruciating," pain, and said he had not been able to exercise for 18 months. ¶¶119-121. The physical therapist said he would recommend Mr. Dupree for surgery because his left hip was at an "end stage," and he had a "large leg difference." ¶¶120-127.

The FMC Devens has a Utilization Review Board, a group of medical professionals that review requests for surgeries, like joint replacements. ¶¶128. The clinical director has final approval in these meeting over whether a joint replacement will be authorized. ¶¶33, 128. On May 25, 2016, the Board, including the clinical director, approved Mr. Dupree's surgery. ¶126.

On June 21, 2016, Mr. Dupree went to UMass Memorial Medical Center for a hip replacement consultation. ¶135. The doctor noted that he had severe degenerative joint disease, and he could not walk without a walker to assist him. ¶136. He was referred for a surgical consultation. *Id*.

3

In July 2016, Dr. Murray learned that Mr. Dupree would not be allowed to have the surgery after all because he did not have enough time left in his sentence – not because his condition did not merit it, but because the BOP's Clinical Guidelines require 12 months left on his release. ¶¶137-138. It is unclear why this occurred, because the Guidelines were not rigid criteria, but rather a set of guidelines for doctors to follow, and the BOP's own regulations give the clinical director (who had already approved it) the final say as to whether a joint replacement is approved or not. ¶¶27, 32-35. According to an email by Dr. Murray, a health administrator may have blocked the surgery. ¶141. After learning that Mr. Dupree would not get the surgery, Dr. Murray emailed colleagues to say that Mr. Dupree has "terrible arthritis" but "the BOP isn't going to do anything for him," "someone knew about the need for [Mr. Dupree's] hip to get fixed years ago," and that Mr. Dupree "should have had his hip replaced back in 2015 when it was recommended." ¶¶139-141, 144.

c. **Mr. Dupree is Released From Custody, Gets a Hip Replacement, and is Fully Healed Within Weeks.**

After learning he would not get treatment at FMC Devens, despite giving up halfway house time, Mr. Dupree pressed to get released so he could get treatment outside the BOP; he was released on December 27, 2016. ¶142-143, 145-149. After he got out, he applied for Medicaid, found surgeon Dr. William Long, had the hip transplant on March 7, 2017, and was fully recovered, with no more pain, about three weeks later. ¶¶150-153.

In his expert report and testimony, Dr. Long stated that Mr. Dupree was a candidate for a hip replacement years before he actually received it, as early as 2012 or 2013, and that "[t]here was no reason to delay surgery in an individual who was in his 40's and using a walker to ambulate." ¶¶156-157.  He also stated that hip replacements typically heal in 3-6 weeks, and that an "18 month window for 'recovery' is not consistent with standard clinical care pathways." *Id*.

4

Dr. Long also testified that due to the delay in surgery, the space where Mr. Dupree used to have cartilage between the ball and socket of his hip joint had filled in with bone: "When a hip is as arthritic as his, the body tries to stabilize or fuse the hip. So it's trying to auto stabilize a very, very painful hip." ¶¶158. This bone formation was so severe it made it more difficult to properly place the hip replacement during surgery. *Id*.

In rebuttal, Dr. David Lent, hired by the defense, stated in his report that delaying surgery is appropriate for young people generally, and that recovery can take several months, including physical therapy and other treatments. ¶159. But Dr. Lent does not say, specifically, that the Utilization Review Board and the clinical director for FMC Devens (or any other doctor who approved the surgery) were wrong to approve the surgery on May 25, 2016, that it was medically necessary for Mr. Dupree to have 12 (or 18) months left on his sentence to ensure there was time to receive the surgery, or that the specific delay Mr. Dupree experienced was medically appropriate. *Id*.

  d. **Mr. Dupree Claims.**

Mr. Dupree filed a Form 95, as required under the FTCA, which the BOP received on July 26, 2017. The claim was rejected on January 29, 2018. Dr. Dupree filed claims under the FTCA against the United States and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) against Dr. Sommers and Dr. Murray on April 5, 2018. All defendants answered on January 29, 2019. ¶172.

## ARGUMENT

Summary judgment is appropriate where there are no issues of material fact in dispute and the movant is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of a factual dispute will defeat summary judgment only if the facts at issue are material under the applicable legal standard.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Substantive law will identify which facts are material for purposes of summary judgment, as only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

I.  **THE UNDISPUTED FACTS SHOW THAT THE BOP BREACHED ITS DUTY TO PROVIDE MEDICAL CARE TO MR. DUPREE WHEN IT UNNECESSARILY DELAYED AND THEN DENIED THE HIP REPLACEMENT SURGERY.**

The Federal Tort Claims Act provides that the United States shall be liable for injury to a person caused by the negligent or wrongful act or omission of any employee of the United States, acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable. 28 USC § 1346(b). Liability is determinable in accordance with the substantive law of the place where the tortious act or omission occurred. *United States v. Olson*, 546 U.S. 43, 44 (2005).

   a. **BOP, and its Agents and Employees, had a Duty to Provide Mr. Dupree with Adequate, Timely, Medical Care.**

The United States owed three overlapping duties of care to Mr. Dupree, under federal and New York state law, each of which can form the basis for liability under the FTCA. ***First***, "the duty of care owed by BOP to federal prisoners is fixed by 18 U.S.C.A. § 4042," *United States v. Muniz*, 374 U.S. 150, 164 (1963), which provides that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States . . . ." 18 U.S.C.A. § 4042(a)(2) & (3). Negligent or intentional violations of this duty of care are actionable under the FTCA, even if state tort law would forbit such a claim. *Muniz*, 374 U.S. at 164. This duty extends to providing adequate and prompt medical care to inmates in their custody. *E.g.*, *Jones v. United States*, 91 F.3d 623, 625 (3d Cir. 1996); *Wooten v. United States*, 825 F.2d 1039, 1045 (6th Cir. 1987). New York law is in accord.

6

*Kagan v. State*, 221 A.D.2d 7, 8 (N.Y. App. Div. 2nd Dep't 1996) ("It is well settled that the State owes a duty to its incarcerated citizens to provide them with adequate medical care."); *Powlowski v. Wullich*, 102 A.D.2d 575, 587 (N.Y. App. Div. 4th Dep't 1984); *Marchione v State of New York*, 194 AD2d 851, 854–55 (N.Y. App. Div. 3rd Dep't 1993) (Correctional facilities and their agents and employees have "a duty to render adequate medical services to inmates without undue delay" and, therefore, breaches the duty of care owed to inmates whenever "delays in diagnosis and/or treatment [are] a proximate or aggravating cause of [a] claimed injury.").

**Second**, the New York Court of appeals held that a hospital breaches the duty of care owed to a patient when it fails to provide the patient with the course of treatment prescribed by a treating doctor. *Toth v. Cmty. Hosp. at Glen Cove*, 22 N.Y.2d 255, 265, 239 (N.Y. 1968); *see also Kless v. Paul T.S. Lee, M.D., P.C.*, 19 A.D.3d 1083, 1084 (N.Y. App. Div. 4th Dep't 2005) ("The hospital may be liable in malpractice for the conceded failure of its staff to carry out a physician's order."). In such an instance, the fact that a hospital conformed to accepted standards of the medical practice is carrying out a course of treatment different than that which the treating doctor prescribed is "*immaterial*." *Toth*, 22 N.Y.2d at 239 (emphasis added). A hospital's failure to adhere to the orders of a treating physician is a *per se* breach of the duty of care, which, therefore, "leave[s] little [to] dispute" about the hospital's liability for medical malpractice. *Id.* at 264.

The plaintiffs in *Toth* were born premature and dangerously ill at defendant's hospital. *Id.* at 258. Accordingly, their pediatrician prescribed that they be administered oxygen at a rate of six liters per minute for the first 12 hours, and thereafter at a rate of four liters per minute. *Id.* Despite the pediatrician's orders, the hospital staff treated the plaintiffs with 6 liters of oxygen

7

throughout—they never reduced the oxygen treatment to four liters. *Id.* at 261. The court held that failure to follow the course of treatment prescribed by the physician, despite the fact that oxygen treatment had become disfavored among physicians and hospitals, *id.* at 259, was a breach of the hospital's duty of care because the "primary duty of a hospital's [] staff is to follow the physician's order. *Id.* at 265. *See also Garzione v. Vassar Bros. Hosp.*, 36 A.D.2d 390, 392 (N.Y. App. Div. 1st Dep't 1971), aff'd sub nom., 30 N.Y.2d 857, (N.Y. 1972) ("The responsibility of a hospital should ordinarily be determined on the basis of a general rule that it is under the primary duty to follow the directions of physicians rendered in the course of the proper treatment of a patient.").

While the BOP is not primarily a hospital, it provides medical care in a similar setting as one. Courts look at whether there is an analogous claim under state law, one that is similar enough to the claim alleged under the FTCA. *See United States v. Olson*, 546 U.S. 43, 47 (2005). If the BOP's facilities and its staff were operating as a hospital and hospital staff in New York, they would be liable as private persons, so this line of cases supports a claim under the FTCA.

*And third*, under the New York Court of Claims Act, the State of New York is only liable based on the "same rules of law as applied to actions in the supreme court against individuals or corporations." N.Y. Ct. Cl. Act § 8. Thus, the law that applies in the Court of Claims is in essence the law that would apply to individuals and that a delay in treatment. And the Court of Claims has ruled that a delay in medical treatment is tortious. In *Stanback v. State*, the Court of Claims found that an "unreasonable delay in treatment," in providing a knee surgery to an incarcerated person was medical malpractice. 163 A.D.2d 298, 298 (N.Y. App. Div. 2d Dep't. 1990). In *Kagan v. State*, the Court of Claims explained that New York law finds this duty to provide adequate and prompt medical care to people in prison under the law of negligence and

malpractice. 221 A.D.2d 7, 16 (N.Y. App. Div. 2d Dep't 1996). (The Defendants may argue that Mr. Dupree is trying to argue liability based on a constitutional tort, which is not permitted under the FTCA. But it is clear these cases lie under the law of regular torts, exactly what the FTCA does permit.)

Taken together, these three lines of cases show that the BOP had a duty to provide Mr. Dupree with the medical care that its doctors were prescribing, within a reasonable period of time. They could not allow him to languish, in pain and unable to walk, without treatment.

### b. The BOP Breached Its Duty of Care to Mr. Dupree.

The undisputed facts demonstrate that the BOP breached its duty to provide Mr. Dupree medical care. Mr. Dupree had severe degeneration in his left hip in 2013, and was in pain. By January 2015, he was having trouble moving around, and was in even more pain. Dr. Sommer scheduled an orthopedic consultation. At that consultation, in May 2015, doctors at CrystalRun Healthcare found that he was a candidate for surgery. Dr. Sommer agreed, and requested a transfer to FMC Devens for surgery in November 2015 – and Mr. Dupree would have been approved, but Dr. Sommer never gave him a cane, so he was forced to limp for months to prove his condition was as bad as the doctors had already determined it was. After the transfer, in May 2016, the clinical director at FMC Devens approved the surgery. And in June 2016, doctors at UMass General were ready to schedule a surgical consultation. At this point, Mr. Dupree – a man in his 40's – was in extreme pain and could not walk without a walker. But Mr. Dupree never got the surgery while in BOP custody.

There is no reasonable explanation as to why Mr. Dupree was denied this treatment. The BOP's Clinical Guidelines said he needed to try a cane and physical therapy, both to treat his pain and to show he had exhausted all non-surgical options to treat his hip. But Dr. Sommer did not even give him a cane until December 2015, after Mr. Dupree has been denied transfer to

FMC Devens. And the Clinical Guidelines are, as titled, mere guidelines; the final decision is made by the clinical director at a Utilization Review Board meeting. But even after Mr. Dupree was approved for surgery in May 2015 by the clinical director (who has final say according to BOP regulations), someone at the BOP decided Mr. Dupree could not get the surgery he desperately needed because he only had 11 months left on his sentence, not 12. None of the doctors involved in Mr. Dupree's care agreed or approved the cancellation. In fact, five doctors had found that Mr. Dupree needed the surgery: (1) CrystalRun Healthcare's doctor, (2) Dr. Sommer, (3) Dr. Murray, (4) The FMC Devens Clinical Director, and (5) Umass Memorial's doctor. Denying it was merely an administrative decision, against medical advice, that left Mr. Dupree in horrible pain.

      The only conclusion is that Mr. Dupree was denied medical care that the BOP had a duty to provide. Mr Dupree should be granted summary judgment as to liability on his FTCA claim. The extent of the unnecessary delay, and precisely how much injury Mr. Dupree suffered as a result, is a question of damages for trial.

## CONCLUSION

For the reasons stated above, Courtney Dupree should be granted partial summary judgment under Federal Rule of Civil Procedure 56 as to liability on his Federal Claims Torts Act claim against the United States of America.

Dated: New York, New York
March 13, 2020

Rickner PLLC

By: /s/

Rob Rickner

233 Broadway Suite 2220
New York, New York 10279
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*