**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**COURTNEY DUPREE,**

                                Plaintiff,

            vs.

**UNITED STATES OF AMERICA, DIANE**
**SOMMER, M.D., AND SCOTT**
**MURRAY, M.D.,**

                                Defendants.

**Index No. 18-cv-7073 (AJN)**

**MEMORANDUM OF LAW IN OPPOSITION TO DR. SOMMER'S**
**MOTION FOR SUMMARY JUDGMENT**

Rɪᴄᴋɴᴇʀ PLLC
233 Broadway, Suite 2220
New York, NY 10016

On the Brief:

        Robert Rickner, Esq.

.

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... I

TABLE OF AUTHORITIES ........................................................................................... II

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 2

    a. Dr. Sommer Ignores BOP Guidelines and Delays Mr. Dupree's Treatment. ........................... 2

    b. It is Too Late for Mr. Dupree to Get Surgery in Custody,
    and He is Left in Extreme Pain ................................................................................ 3

    c. Mr. Dupree is Released From Custody, Gets a Hip Replacement,
    and is Fully Healed Within Weeks ........................................................................... 4

ARGUMENT ...................................................................................................................... 5

  I. DR. SOMMER IGNORED BOP GUIDELINES, WHICH DELAYED SURGERY FOR
    MORE THAN A YEAR, INEVITABLY LEAVING MR. DUPREE IN EXTREME,
    UNNECESSARY PAIN, AND VIOLATING THE EIGHTH AMENDMENT ..................... 5

    a. Mr. Dupree's Arthritis Was A Serious Medical Condition ........................................ 5

    b. Dr. Sommer Was Deliberately Indifferent to Mr. Dupree's Need for Treatment ................. 6

CONCLUSION .................................................................................................................. 8

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................5

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ......... 1, 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................5

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) ....................................................5

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000) ...........................................................5

*Estelle v. Gamble*, 429 U.S. 97 (1976) ....................................................................7

*Farmer v. Brennan*, 511 U.S. 825 (1994) ..................................................................6

*Harrison v. Barkley*, 219 F.3d 132 (2d Cir. 2000) .........................................................5

*Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1994) .........................................................7

*Johnson v. Wright*, 412 F.3d 398 (2d Cir. 2005) ..........................................................5

*Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) .................................................5, 6

**STATUTES**

Fed. R. Civ. P. 56 .................................................................................... 1, 5, 8

Plaintiff Courtney Dupree ("Mr. Dupree" or "Plaintiff") hereby submits this Memorandum of Law in Opposition of to Dr. Diane Sommer's ("Dr. Sommer" or "Defendant") motion for summary judgment under Federal Rule of Civil Procedure 56 as to the claims made against her under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

## PRELIMINARY STATEMENT

Mr. Dupree, despite only being in his 40s, developed severe, degenerative arthritis, and over the course of 4 years it steadily became more painful, eventually forcing him to use a walker. Dr. Sommer was his doctor, and she was keenly aware of his degeneration. Eventually, she sent him to an orthopedist who confirmed that Mr. Dupree's condition could only be cured through hip replacement surgery. Under the Bureau of Prison's ("BOP") Clinical Practice Guidelines, Mr. Dupree would not be approved for a hip replacement surgery unless he haD tried all non-surgical options, including a cane (which the Guidelines said was "integral" to arthritis treatment), and he needed to have at least a year left on his sentence. But Dr. Sommer waited six months before submitting the surgery request, and then caused even more delay because Dr. Sommer never prescribed Mr. Dupree a cane. So the BOP, as the Guidelines stated, refused to approve him for surgery unless he tried one for several months. These delays left Mr. Dupree with less than a year on his sentence, and thus the BOP refused to approve his surgery a second time. Mr. Dupree had to wait for more than a year, in what medical professionals called "excruciating pain," before he was released from custody, had his hip replaced, and finally was relieved of pain. This was the entirely predictable result of Dr. Sommer ignoring the Guidelines, and waiting months before requesting the surgery. This deliberate indifference to Mr. Dupree's serious medical needs violated his rights under the Eighth Amendment, so Dr. Sommer's motion for summary judgment should be denied.

1

## STATEMENT OF FACTS

### a. Dr. Sommer Ignores BOP Guidelines and Delays Mr. Dupree's Treatment.

Courtney Dupree was in his 40's when he was incarcerated in March 2011. ¶¶1-2.[1] In March 2011, he fell from his bunk, possibly exacerbating a prior basketball injury. ¶13. An x-ray showed severe degeneration of his left hip, and over the next two years, his pain got worse and he lost mobility. ¶¶14-17. By 2013, he had been transferred to FCI Otisville, and medical records, including an MRI, show that he had severe arthritic degeneration in his left hip, he had trouble moving to the top bunk, his left leg had become shorter, and he was discussing hip replacement surgery with the clinical director at FCI Otisville, Dr. Sommer. ¶¶21-23. Dr. Sommer now admits that in 2013 she recognized that he may need hip replacement surgery in the future. *Id*.

In his expert report and testimony, Dr. Long stated that at this point, as early as 2012 or 2013, Mr. Dupree was already candidate for hip surgery. ¶¶125-126. He could not pinpoint the exact time because Dr. Sommer had never sent him to an orthopedist for a consultation. ¶126.

The BOP's own Clinical Practice Guidelines state that: "Durable Medical Equipment (DME) such as canes, crutches, or walkers are an ***integral*** part of the treatment of severe joint disease of the knee or hip and may help reduce pain, facilitate performance of exercise regimens, and maintain functional status. ¶10 (emphasis added). Further, the Guidelines stated that hip replacement surgery would not be authorized by the BOP unless the arthritis could no longer be treated using non-surgical interventions, specifically, restrictions on physical activity, home exercises, and a cane (DME). ¶10. Mr. Dupree had been given home exercises, and was restricting his physical activity, but Dr. Sommer did not prescribe Mr. Dupree a cane because she

---

[1] All references to paragraphs herein correspond with the 56.1 Counterstatement, filed concurrently with this brief.

thought that canes are only useful if a patient was prone to tripping and falling. ¶¶11, 61-62. In fact, between October 2013 and January 2015, Mr. Dupree did not receive any medical treatment, except medication, for his severe arthritis, despite continually complaining of pain and losing mobility. ¶¶30-37.

By January 14, 2015, the pain had become even worse, he had trouble getting out of a chair, and he was referred to an outside hospital orthopedic consultation. ¶¶38-40. At the consultation, four months later, on May 26, 2015, the doctor at CrystalRun Healthcare found that he could try an intraarticular injection, but that the only definitive treatment was a hip replacement, and Mr. Dupree chose the hip replacement. ¶¶39-41. Dr. Sommer first learned that Mr. Dupree would need a hip replacement the following day, and was reminded again on June 18, 2015, after Mr. Dupree spoke to yet another member of Dr. Sommer's medical staff about needing surgery. ¶¶44-45.

Despite knowing that Mr. Dupree needed surgery, Dr. Sommer did not even bother to read the outside orthopedist's medical advice until three months later. ¶49. By August 27, 2015, Mr. Dupree's left leg had gotten so much shorter he needed a lift in his shoe, and he was walking with a severe limp. ¶48.

In November 2015, Dr. Sommer put in a request that Mr. Dupree be transferred to FMC Devens where he could get a new hip. ¶52. But the request was denied because Dr. Sommer had never given Mr. Dupree a cane. ¶¶10, 63, 69. Dr. Sommer said that giving him a cane was "stupid," but finally prescribed him one anyway, in December. ¶63.

**b. It is Too Late for Mr. Dupree to Get Surgery in Custody, and He is Left in Extreme Pain.**

On March 24, 2016—after Mr. Dupree had tried a cane for three months—Dr. Sommer resubmitted the transfer request, it was approved, and Mr. Dupree was transferred to FMC

Devens. ¶¶69-72. At this point, due to the Guidelines that require at least a year left in custody before surgery will be approved, it was effectively too late for Mr. Dupree. ¶73. In May, a physical therapist noted that Mr. Dupree was in "excruciating," pain, and said he had not been able to exercise for 18 months. ¶¶89-94. He also said that his hip was at an "end stage," and noted that he had a "large leg difference." *Id*. On June 21, 2016, a doctor noted that he had severe degenerative joint disease, and he now needed walker to move around. ¶¶135-136. In July, a doctor an FMC Devens admitted in emails that Mr. Dupree has "terrible arthritis" but "the BOP isn't going to do anything for him," "someone knew about the need for [Mr. Dupree's] hip to get fixed years ago," and that Mr. Dupree "should have had his hip replaced back in 2015 when it was recommended." ¶¶107-108, 112.

### c. Mr. Dupree is Released From Custody, Gets a Hip Replacement, and is Fully Healed Within Weeks.

After learning he would not get treatment at FMC Devens, despite giving up halfway house time, Mr. Dupree pressed to get released so he could get treatment outside the BOP; he was released on December 28, 2016. ¶74, 115-117. After he got out, he found Dr. Long, had the hip transplant on March 7, 2017, and was fully recovered, with no more pain in his left hip about three weeks later. ¶¶118-119. *Id*. Dr. Long also testified that due to the delay in surgery, the space where Mr. Dupree used to have cartilage between the ball and socket of his hip joint had filled in with bone: "When a hip is as arthritic as his, the body tries to stabilize or fuse the hip. So it's trying to auto stabilize a very, very painful hip." ¶126. This bone formation was so severe it made it more difficult to properly place the hip replacement during surgery. *Id*. Mr. Dupree also has pain and an increased chance of needing surgery on his right hip due to the delay in getting surgery. ¶127.

**ARGUMENT**

Summary judgment is only appropriate where there are no issues of material fact in dispute and the movant is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

**I.     DR. SOMMER IGNORED BOP GUIDELINES, WHICH DELAYED SURGERY FOR MORE THAN A YEAR, INEVITABLY LEAVING MR. DUPREE IN EXTREME, UNNECESSARY PAIN, AND VIOLATING THE EIGHTH AMENDMENT.**

To state a claim under the Eighth Amendment, a plaintiff must prove they "[1] had a serious medical condition and [2] that it was met with deliberate indifference." *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (internal quotation marks omitted). Dr. Sommer is liable for constitutional rights violations, as a federal employee, under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

**a.  Mr. Dupree's Arthritis Was A Serious Medical Condition.**

The first element is objective, and requires "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks omitted). But when an inmate is entirely denied adequate care, they need only show that their underlying medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 184–86 (2d Cir. 2003). Determining whether a condition is sufficiently serious includes "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition, significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998); *see also Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (explaining that failure to treat a cavity is deliberate

indifference because it is "a degenerative condition, and if it is left untreated indefinitely, it is likely to produce agony and to require more invasive and painful treatment").

Mr. Dupree's arthritis readily meets this definition of a serious medical condition. His arthritis is referred to as severe as early as 2011, and his surgeon, Dr. Long, testified that he was a candidate for a hip replacement in 2012 or 2013. His condition consistently deteriorated over the years, and by January 2015 he had lost so much mobility he had trouble even getting out of a chair. Eventually, despite only being in his 40s, he needed a walker to ambulate. And it caused chronic, substantial pain, for years, until he finally received surgery.

**b.   Dr. Sommer Was Deliberately Indifferent to Mr. Dupree's Need for Treatment.**

The second element of an Eighth Amendment claim is subjective. "[T]he charged official must act with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. This *mens rea* has been equated with criminal recklessness, which is actually a lower standard than civil recklessness in tort cases; an actor need only disregard "a risk of harm of which he is aware." *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). "The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices." *Salahuddin*, 467 F.3d at 280.

Dr. Sommer was fully aware of the course of treatment that she was required to provide because it was dictated in the Guidelines, and that treatment included a cane. But she never prescribed one to Mr. Dupree. In 2013, she knew that Mr. Dupree could need hip replacement surgery, and by May 2015, she knew that it was the definitive treatment. And under the Guidelines, Mr. Dupree was not eligible for the surgery he needed unless he had tried using a cane to manage his symptoms and had less than a year left in custody. But instead of giving Mr. Dupree a cane, and promptly requesting the surgery, she did not even bother reading the outside consultant's medical advice until three months later, and did not ask for a transfer until three

months after that. And she did not prescribe Mr. Dupree a cane until the BOP refused to give him

surgery because he had not tried one yet, which is exactly what the Guidelines said would

happen. By the time she had excluded all non-surgical options, Mr. Dupree did not have enough

time left in his sentence to get surgery. Predictably, this delayed Mr. Dupree's ultimate

treatment, leaving in him ever worsening pain and ultimately forcing him to use a walker.

This chain of events is not, as Dr. Sommer now tries to claim, someone else's fault, or the

unfortunate result of the BOP's bureaucracy. Sommer Br. at 21. Dr. Sommer knew (or at least

recklessly disregarded the risk) that unless she followed the Guidelines, Mr. Dupree was simply

not going to get surgery, and that was going to leave him in pain, unable to walk. If she had

given him a cane to prove that he had tried it, and put in the transfer requests in May or June

2015, Mr. Dupree would not have had to wait more than a year, in pain, to get the surgery he

needed.

Dr. Sommer also cannot absolve herself of liability by pointing to all the times Mr.

Dupree had been seen by medical staff. Sommer Br. at 21-23. Seeing a patient repeatedly is no

defense if "the course of treatment … did not alleviate his suffering." *Hathaway v. Coughlin*, 37

F.3d 63, 68 (2d Cir. 1994). If anything, repeatedly seeing Mr. Dupree proves that Dr. Sommer

knew that Mr. Dupree was in pain and deteriorating, and proves that she knew it was imperative

for her to take steps to ensure he timely received surgery. *Id*. (explaining that a jury could infer

deliberate indifference from repeated ineffective treatment).

Finally, Dr. Sommer is not entitled to qualified immunity. The right to be free from

"deliberate indifference to serious medical needs" was clearly established in 1972 in *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976). Mr. Dupree has raised an issue of fact as to whether Dr.

Sommer's deliberate indifference to his medical needs violated his rights, so Dr. Sommer cannot

be granted qualified immunity, "because it would not be objectively reasonable for him to believe his conduct did not violate [Mr. Dupree's] rights." *Hathaway*, 37 F.3d at 69.

## CONCLUSION

For the reasons stated above, Dr. Diane Sommer's motion for summary judgment under Federal Rule of Civil Procedure 56 should be denied.


Dated:  New York, New York
        March 22, 2020


Rickner PLLC


By:          /s/

             Rob Rickner

233 Broadway Suite 2220
New York, New York 10279
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*